*Judgment on the verdict.*

---

## John Heard, Judge of Probate &c. *versus* Giles Lodge *et al.*

In an action on an administration bond against the administrator and his sureties, for a refusal on his part to pay a judgment recovered against him, such judgment, if not obtained by fraud or collusion, is conclusive upon the sureties, in regard to all matters of defence affecting the merits of the claim as between the parties to such judgment.

Thus, where in an action by a corporation the administrator pleaded in abatement the non-existence of the corporation, and issue was joined thereon and found for the plaintiffs, and judgment was rendered on the verdict, it was *held*, that in an action on the administration bond the sureties were estopped to deny the existence of the corporation at the time of the rendition of the judgment.

The attorney of record by whose agency a judgment has been recovered against an administrator, has authority to make a demand on the administrator for payment, pursuant to Revised Stat. *c.* 70, § 3, which requires such a demand previous to the commencing an action on the administration bond.

So where several are constituted assignees, with power to collect the debts due to the assignor, one of them may make such a demand in behalf of all.

Where such a demand was made in the street, it was *held*, that if the creditor intended to make a demand, and the administrator so understood it, and did not object to the time or place, nor propose any other for that purpose, but expressed an intention not to pay, it was a legal demand.

Debt on an administration bond, against Giles Lodge as principal, and two others as sureties, conditioned for the performance by Lodge of his duties as administrator on the estate of Mary Langdon. On the writ was an indorsement, stating that the action was brought for the use and benefit of the Boston Glass Manufactory, (an incorporated company,) as judgment creditors. The trial was had before *Shaw* C. J., upon the general issue.

The plaintiff offered in evidence an exemplification of the judgment, being the judgment of this Court rendered at March term 1836, in favor of the Boston Glass Manufactory against the goods and estate of Mary Langdon deceased, under the administration of Lodge. In that action the defendant pleaded in abatement, that, at the time of the purchase of the writ, there was no such corporation established by law ; and issue was taken thereon and found for the plaintiffs.

It was proved that the estate of Mary Langdon had been represented insolvent ; that this judgment had been laid before the commissioners, who reported the amount due ; but that by the settlement of the administrator's account it appeared that the estate was not ultimately insolvent.

In order to prove a demand of the amount of the judgment, the plaintiff called William Sullivan, to whom, with three others, all the property of the Boston Glass Manufactory had been assigned in trust, in May 1827. He testified that he was the attorney of record for the plaintiffs in the suit in which the judgment was recovered ; that some time in June 1836, he saw Lodge, and asked him why this judgment was not paid ; that Lodge answered that the judge of probate had not yet made his decree, and that when he did, the money would be paid. The decree was made in July or August. On the 7th of September the witness addressed a note to Lodge, signed " William Sullivan, assignee and attorney of record to the assignees," requesting payment, and requesting Lodge to appoint a time and place where the witness should meet him on the 9th. Lodge addressed an answer to the witness on the 9th, requesting him to confer with Mr. Austin on the subject. On the 19th the witness addressed another note to Lodge, remarking that the claim remained unsettled, and stating that the witness had no alternative but to sue Lodge and his bondsmen, and declining to enter into the consideration of any subject foreign to the matter of payment. To this the witness received no answer.

After the last note and before the commencement of this action, the witness met Lodge in State street, in the forenoon, and asked him for the money, which Lodge refused to pay. The witness told him he should be under the necessity

of suing him and his bondsmen ; and Lodge told him he should not blame him, that he (the witness) must do his duty, and that he (Lodge) would defend himself as well as he could. The witness thought it probable that Lodge then again requested him to call on Mr. Austin, as he had done so several times, but the witness said he should not. He did not call on Mr. Austin, because he thought it would be unavailing. Lodge upon this occasion made no objection to the time and place of demand, but gave the witness to understand that he would not pay the money.

The counsel for the defendants then stated, that the defence rested mainly on two grounds : 1. That the demand was not made in the proper manner ; nor, 2. by the proper person.

To support this defence, the defendants' counsel, relying on Revised Stat. c. 70, § 3, requiring the demand on the administrator to be made " by the creditor," contended that for many years the Boston Glass Manufactory had had no clerk nor other officers, had held no meetings, and had done no corporate acts, and therefore had ceased to exist. It was insisted, that if the corporation had ceased to exist, there was no creditor ; that if Mr. Sullivan had ever been the attorney of the corporation, his authority had ceased by its dissolution.

The evidence was objected to by the counsel for the plaintiff.

Whereupon it was ruled, that as between these parties, the rendition of the judgment was conclusive evidence of the existence of the corporation, for the purpose of receiving the debt therein mentioned, up to the time when the judgment was rendered ; and that no evidence was admissible to prove a dissolution prior to that time ; but that evidence was admissible to prove a surrender, disfranchisement or other dissolution of the corporation, between the rendition of the judgment, in March 1836, and the time of the demand.

The defendants thereupon offered evidence for the purpose of proving such subsequent dissolution.

Mr. Sullivan, being called again by the defendants' counsel, testified that he was the attorney and agent and assignee of the corporation ; that there were four assignees ; that he was the legal adviser and manager ; that he had a general authority

from his co-assignees, to do any act necessary to settle the claims of the company ; that the assignees were constituted the attorneys of the company irrevocable ; that he was not specially authorized by any agent or officer of the company to make the demand on Lodge, but the assignees were authorized generally to collect the debts ; and that if any thing should be received in this suit, it was not to go to the company, but to the assignees, for whom it might concern.

The Chief Justice proposed to instruct the jury, that, as to the manner of the demand, if Mr. Sullivan, at the time he met Lodge in State street, intended to make a demand of payment of this judgment, and Lodge so understood it, and did not object to the time or place, nor propose any other, but expressed an intention not to pay, then in point of time, place and manner, it was a reasonable demand.   Whereupon a verdict was entered by consent for the amount of the penalty of the bond, subject to the opinion of the whole Court.

*March 10th.*    *Austin* (Attorney General), for the defendants, cited Revised Stat. c. 70, § 3, providing that an administration bond may be put in suit by a creditor of the intestate, when he shall have recovered judgment for his debt against the administrator, and the administrator shall have neglected, " upon demand made by the creditor, to pay the same, or to show sufficient goods or estate of the deceased, to be taken in execution for that purpose " ; and he contended that the demand was insufficient, because it did not embrace both branches of the alternative, namely, " to pay " the debt, or " to show sufficient goods or estate " ; that it was not made " by the creditor," inasmuch as the authority of an " attorney of record," ends with the recovery of the judgment, except that he may enter satisfaction on the record ; *Tipping* v. *Johnson*, 2 Bos. & Pul. 357 ; that Mr. Sullivan could be created an attorney of the corporation only by deed, but no deed had been produced ; that according to his testimony, he had a power jointly with three other persons, and he therefore could not alone make a valid demand ; Bac. Abr. *Authority*, *C* ; *Guthrie* v. *Armstrong*, 5 Barn. & Ald. 628 ; that the demand made at 'Change hours, in State street, was not made at a proper time or place ; that the judgment, as between the

parties to it, would be conclusive upon a question then put in issue, but here the parties were not the same, and if the administrator, either from accident or by collusion, failed to prove that the corporation had been dissolved, the sureties were not barred from now setting up in defence, the nonexistence of the corporation ; *Case* v. *Reeve*, 14 Johns. R. 79 ; *Dawes* v. *Shed*, 15 Mass. R. 6.

*C. P. Curtis*, for the plaintiff, cited to the point, that the judgment was conclusive upon the sureties as well as the principal in the bond, Revised Stat. *c.* 70, § 10, last clause ; 1 Stark. Evid. (Metcalf's edit.) 190 et seq. ; *Calhoun's Lessee* v. *Dunning*, 4 Dallas, 120 ; *Strutt* v. *Bovingdon*, 5 Esp. R. 56 ; Bull. N. P. 40 ; and as to the sufficiency of the demand, *State Bank* v. *Hurd*, 12 Mass. R. 172 ; *Baldwin* v. *Farnsworth*, 1 Fairfield, 414 ; *Richardson* v. *Learned*, 10 Pick. 269 ; *Ayer* v. *Ayer*, 16 Pick. 335.

DEWEY J. delivered the opinion of the Court. To main- *March 19th* tain this action, it is incumbent on the plaintiff to establish two points : 1. That a judgment has been obtained in a court of law against the administrator on the estate of Mary Langdon, in favor of the Boston Glass Manufactory, for whose benefit this suit is instituted ; 2. That payment of the sum thus ascertained to be due, has been demanded of the administrator.

The first of these points is proved by the records of this Court, and not controverted by the defendants.

As to the question of a demand on the administrator for the payment of this judgment, the defendants resist it on several grounds.

1. They deny that there was any such corporation, having a legal existence and competent to make a demand, as the Boston Glass Manufactory.

Upon the trial before the jury, the plaintiff claimed that the judgment rendered in favor of the Boston Glass Manufactory, against the administrator, was conclusive evidence of the existence of the corporation, and particularly so, as it appears that the precise fact of the existence of this corporation was put in issue and determined in that action. The judge ruled that this judgment was conclusive evidence of the existence

of the corporation at the time of the rendition of the judgment, but that evidence was admissible to prove a dissolution of the corporation after that time and before the making of the demand.

It is now urged on the part of the defendants, that the judgment referred to was, as regards these sureties, between other parties, and therefore they are not bound by it.

To most purposes, it seems to us, that the sureties in an administration bond are, as well as the principal, estopped from controverting the validity of a judgment ascertaining the amount of a debt to be paid by the administrator. They are in many respects like the sureties in a bail bond, and equally bound by the proceeding against the principal. The duty they have assumed is, that their principal will pay on demand all debts ascertained by judgment of a court of law against him in his capacity as administrator, if the estate be solvent. His failure to make payment is a breach of the administration bond. The sureties are not to be concluded by a judgment suffered collusively by the administrator, and they have also the right to insist that the action against the administrator in the name of the creditor shall be commenced within four years from the time when the administrator shall give the public notice of his appointment required by the statute. This statute provision was undoubtedly intended for the benefit of the sureties. It is a positive bar arising from lapse of time. which cannot be waived by the administrator, nor in any way be answered or avoided. Its effect is therefore controlling and decisive, and to this extent the sureties may object to the effect of a judgment against their principal, when sued on their bond to the judge of probate. Such was the decision of this Court in the case of *Dawes* v. *Shed*, 15 Mass. R. 6, cited by the counsel fo' the defendants. But that case furnishes no precedent for this defence, inasmuch as no such objection as was there urged, exists here.

We are satisfied, that as to all those matters of defence going to the merits of the debt as between the original parties, the judgment against the administrator must be taken to be conclusive in a suit on the administration bond, where there has not been fraud or collusion. In the present case the facts

not only fail to show any such collusion, but it is quite apparent that the administrator resisted the former action upon the same ground, as the defendants are now desirous of presenting in this suit.

The defendants offered some evidence to the jury, for the purpose of proving a dissolution of the corporation after the rendition of the judgment against the administrator, but it was clearly insufficient for the purpose, and that point was not understood to be urged further by the counsel for the defendants.

But the defendants insist that no legal demand has been made, because of the insufficiency of the authority of the agent by whom the same was made. The authority of Mr. Sullivan to act in the matter, was placed by the plaintiff on two grounds. 1. That he was the attorney of record in the suit of the Boston Glass Manufactory against the administrator 2. That he was one of the assignees of the corporation, and an agent with general authority from his co-assignees to do any act necessary to settle the claims of the company. His authority as the attorney of record would, in our opinion, authorize him to make the demand, and upon payment to discharge the judgment. It is within the scope of the powers of the attorney to institute all such further proceedings as are necessary to render the judgment effectual to the creditor in the recovery of his debt. It has been held to be the imperative duty of an attorney in the original action, where the body of the debtor was arrested, to institute a *scire facias* against the bail ; and if he neglect so to do, he is held responsible.

It was clearly within the authority of Mr. Sullivan, as the attorney of the creditor, to take all the preliminary measures requisite to the institution of a suit on the probate bond. If this were doubtful, we think he had ample authority arising from his relation to this debt, as one of the assignees and the agent of his co-assignees.

It was objected on the part of the defendants, that an authority to four persons to act for the corporation, could not be properly held to authorize acts in their behalf by only one of their number. It is undoubtedly true, in many cases of delegated authority, that it requires the united act of all the

constituted agents or attorneys to the legal exercise of the power delegated to them, but that the mere authority to receive money on a debt due to their assignor may be exercised by one of several assignees, in behalf of all, seems to us too obvious to be questioned.

But it is further contended, that the demand was not made in a suitable place, and also that there was no absolute refusal of payment on the part of the administrator.

Upon recurring to the facts reported in the case, it seems that after the recovery of the judgment against the administrator, Mr. Sullivan notified Lodge of the fact, and requested payment, to which Lodge replied that no decree had yet been made by the judge of probate, and that when it was made the money would be paid.

After the decree was made, and after various written communications between the parties in reference to this claim, it appears that Mr. Sullivan met Lodge in State street, and again requested payment, which was refused by Lodge. Some further conversation ensued between the parties, which is particularly detailed in the report of the evidence given at the trial. The judge ruled, that if one party intended to make a demand, and the other so understood it, and did not object to the time or place, nor propose any other for that purpose, but expressed an intention not to pay, it was a legal demand in this respect.

Is there any objection to the rule of law as thus stated? It is a familiar legal principle, that the necessity of a formal demand is often waived or obviated by the conduct of the other party, or where the state of the case is such as to show that a demand would have been entirely unavailing. It is particularly true in a case where the party wholly denies the right of him who seeks performance, that the demand need not have all the formalities that would be essential, if the party conceded the right of the other, and only claimed the privilege of performing the contract or duty devolved on him, at a different time or place.

Many cases to this point are found in the books.

In the case of *Richardson* v. *Learned*, 10 Pick. 262, a demand was made six miles from the dwellinghouse of the

defendant, for the delivery of property which he was bound
to deliver at his dwelling-house.   The defendant replied to
the demand, that he meant to keep the property ; and this
was held, under the circumstances, a sufficient demand.

A very strong case of the extent of this principle of waiv-
er of legal demand on the part of an executor, is that of
*Miles* v. *Boyden*, 3 Pick. 213.   In that case the executor,
being called upon by the father of the legatee, who was an
infant, for the payment of a legacy, refused paying the same,
assigning as a reason that there was no legacy given to the
infant by the will of the testator, but making no objection to
the authority of the father to make the demand ; and it was
held by the Court, that the executor had thereby waived the
necessity of any other demand, although by law the father had
not by virtue of that relation to the legatee, a legal right to
demand payment of the legacy.

The legitimate object of a demand is to enable the party to
perform his contract or discharge his liability, agreeably to the
nature of it, without a suit at law, and whenever one party
wholly denies the right of the other, a demand must be use-
less.   The rule in chancery seems to be, that if the defend-
ant in his answer denies the right of the plaintiff, he cannot
also insist in his defence that there was no legal demand ; as
was held in *Ayer* v. *Ayer*, 16 Pick. 327.

But at law it is otherwise to this extent, that if the defendant
does not by his declarations and conduct furnish any evidence
from which the jury can infer a waiver, or if the circumstan-
ces of the case do not clearly show a demand could not have
been complied with, the defendant may on the trial insist
upon proof of a demand, although he also denies the right
of the plaintiff

Upon a full consideration of the various objections taken
by the defendants, the Court are of opinion that the law was
correctly stated by the judge at the trial, and that judgment
should be rendered on the verdict.